UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY BUSS,

                    Petitioner,                    Case No. 12-13526
                                                   Honorable Arthur J. Tarnow
v.

THOMAS BIRKETT,

                    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS
CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING
PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

Timothy Buss, ("Petitioner"), filed this petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254. The petition challenges his Oakland Circuit Court jury trial convictions

of nine counts of assault with intent to commit great bodily harm less than murder, MICH.

COMP. LAWS § 750.84, two counts of assault with intent to murder, MICH. COMP. LAWS §

750.83, failure to stop at the scene of an accident resulting in serious injury, MICH. COMP.

LAWS § 257.617, and malicious destruction of property, MICH. COMP. LAWS § 750.377. The

petition raises six claims: (1) there was insufficient evidence presented at trial to sustain

Petitioner's convictions for assault with intent to commit murder; (2) the trial court erred in

failing to instruct the jury on duress; (3) the trial court erroneously limited the cross

examination of prosecution witnesses; (4) the prosecutor committed misconduct; (5)

Petitioner was denied the effective assistance of counsel at trial; and (6) Petitioner was

*Buss v Birkett*, USDC No. 12-13526

denied the effective assistance of counsel on appeal. The Court will deny the petition because

his claims are without merit.

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of

Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).

*See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Buss's convictions arise from allegations that he intentionally drove
> through a carnival, assaulted several people, destroyed property, and fled the
> scene. On the afternoon of May 21, 2006, the Armenian Church and Cultural
> Center, which includes a school, held their annual carnival on their property
> in Southfield. The school principal testified that he saw the driver of a minivan
> attempt to make a 90-degree turn and hit the guardrail protecting the school.
> An expert in accident reconstruction testified that Buss was traveling 56 miles
> an hour before hitting the guardrail. The principal testified that after the rear
> of Buss's van hit the guardrail, Buss continued moving toward the school
> grounds instead of leaving the premises. The principal tapped on Buss's
> passenger side window, but Buss looked straight ahead and
> did not respond. The principal yelled Buss's license number and directed
> nearby children to call 911.
>
> Several witnesses testified that five to seven men surrounded Buss's
> van, yelled, and pleaded with him to stop or drive away from the carnival via
> a safe path. The van eventually stopped on the grass approximately 100 feet
> from several inflatable rides. The children in the area were moved and a path
> was formed for Buss to safely leave the premises. Buss did not take the path.
> Instead, Buss gunned his engine, inched forward about four or five times,
> veered toward the crowd, and then accelerated as he drove through the crowd.
> A carnival employee jumped on the hood of Buss's van in an attempt to stop
> him, but immediately jumped down when Buss accelerated. A parent punched
> out the driver's side window and attempted to steer the vehicle or remove the
> keys from the ignition. Witnesses testified that Buss was steering the wheel
> and had complete control of the van. As Buss drove through the crowd, he hit
> at least nine people and damaged the inflatable rides. Seven of the individuals

*Buss v Birkett*, USDC No. 12-13526

who were injured suffered bruises and scrapes, one suffered two broken ankles, and one suffered a crushed pelvis and broken tailbone. After driving through the carnival, Buss fled the scene. He was later arrested at his home after the police tracked his license plate number.

The defense denied that Buss intended to harm anyone or damage any property, and claimed he was merely attempting to leave the premises in the midst of a loud and aggressive crowd. The defense presented three witnesses, who all testified that Buss was a peaceful person.

*People v. Buss*, No. 278279, 2008 WL 4228285, at *1-2 (Mich. Ct. App. Sept. 16, 2008).

Following trial Petitioner was convicted and sentenced as indicated above. Petitioner then filed a claim of appeal in the Michigan Court of Appeals. His appellate brief raised the following claims:

I. Defendant-Appellant's convictions for assault with intent to murder should be reversed because there was insufficient evidence to find for these offenses.

II. Defendant-Appellant's convictions should be reversed because the court denied a defense request for the duress jury instruction.

III. Defendant-Appellant is entitled to a new trial where the court's denial of the questioning of a witness concerning a prior similar incident was an abuse of discretion.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Buss*, 2008 WL 4228285. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in the Michigan Court of Appeals, along with additional claims of prosecutorial misconduct and ineffective assistance

3

*Buss v Birkett*, USDC No. 12-13526

of counsel. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Buss*, 760 N.W.2d 478 (Mich. 2009) (table).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising the following claims:

I. Prosecutorial Misconduct.

II. Ineffective Assistance of Counsel.

The trial court denied the motion for relief from judgment. Its opinion denying the motion discussed the merits of the claims, and it also found that Petitioner had failed to demonstrate good cause for failing to raise these claims on direct appeal as required by Michigan Court Rule 6.508(D)(3). *People v. Buss*, No. 06-208894-FC, Order (Oakland Cnty. Cir. Ct. Dec. 17, 2010).

After the trial court denied the motion for relief from judgment, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Rule 6.508(D.) *People v. Buss*, No. 307688 (Mich. Ct. App. June 12, 2012). Petitioner applied for leave to appeal that decision in the Michigan Supreme Court, but the application was denied under Rule 6.508(D). *People v. Buss*, 822 N.W.2d 235 (Mich. 2012) (table).

## II. Standard of Review

28 U.S.C. § 2254(d) provides:

*Buss v Birkett*, USDC No. 12-13526

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law when a state court arrives at a conclusion opposite of that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Unreasonable application of clearly established federal law occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. In terms of application, the Supreme Court has stated that, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011). In this way, the writ of habeas corpus operates as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).

*Buss v Birkett*, USDC No. 12-13526

### III. Discussion

A. Sufficiency of the Evidence

Petitioner's first claim asserts that insufficient evidence was presented at his trial to show that he intended to commit murder to support his convictions for the two counts of assault with intent to commit murder. Respondent asserts that the Michigan Court of Appeals reasonably rejected the claim during Petitioner's appeal of right.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only

6

*Buss v Birkett*, USDC No. 12-13526

if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson,* 132 S.Ct. 2060, 2065, 182 L. Ed. 2d 978 (2012).

Here, the Michigan Court of Appeals rejected Petitioner's insufficiency of the evidence claim as follows:

> Defendant argues that the evidence was insufficient to sustain his two convictions of assault with intent to commit murder. We disagree. When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v. Wolfe*, 440 Mich. 508, 515 (1992), amended 441 Mich. 1201 (1992). This Court will not interfere with the trier of fact's role of determining the weight of evidence or the credibility of witnesses. *Id.* at 514. Rather, "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v. Nowack*, 462 Mich. 392, 400 (2000.)

> To sustain a conviction for assault with intent to commit murder, the prosecution must establish beyond a reasonable doubt that the defendant committed "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Hoffman*, 225 Mich. App. 103, 111 (1997); see also MCL 750.83.

*Buss v Birkett*, USDC No. 12-13526

Defendant only challenges the intent to kill element. An intent to kill may be inferred from facts in evidence, including the use of a dangerous weapon. See *People v. McRunels*, 237 Mich. App. 168, 181 (1999), and *People v. Ray*, 56 Mich. App. 610, 615 (1974.) An automobile may be a dangerous weapon if used in furtherance of accomplishing an assault and if capable of inflicting serious injury. *People v. Sheets*, 138 Mich. App. 794, 799 (1984.) Because an actor's state of mind is difficult to prove, only minimal circumstantial evidence is required. See *McRunels*, supra; *Ray*, supra.

Defendant's assault with intent to commit murder convictions arise from his assault of Sona Manzo and her three-year-old son. Evidence was presented that Buss drove a van through a crowd of people. Five to seven men attempted to stop him, guide him away from the crowd, and direct him off premises via a safe path. Defendant did not take the path, ignored pleas to stop, gunned his engine, lurched forward, and accelerated into the crowd. There was evidence that defendant had complete control of the vehicle. Buss hit at least eight people and some of the inflatable rides before running over Manzo, who was holding her young son. The wheels barely missed the toddler because of how Manzo was holding him. As a result of defendant's actions, Manzo suffered a crushed pelvis and broken tailbone. After hitting Manzo, defendant did not stop, but fled the scene. This evidence, viewed in a light most favorable to the prosecution, was sufficient to enable a rational trier of fact to infer that defendant committed the assaults with an actual intent to kill. While the defense argued that defendant intended only to leave the premises, the question of defendant's intent was a matter for the trier of fact to resolve. *People v. Osantowski*, 274 Mich. App. 593, 613 (2007), rev'd in part on other grounds 481 Mich. 103 (2008.) The evidence was sufficient to sustain defendant's convictions of assault with intent to commit murder.

*Buss*, No. 278279, 2008 WL 4228285, at *3-6.

This decision did not result in an objectively unreasonable application of the established standard. While there are certainly less culpable explanations for Petitioner's conduct, such as Petitioner's statement at sentencing that he was intoxicated and was simply trying to get away from the scene, the sufficiency of the evidence directs a court to look at

8

*Buss v Birkett*, USDC No. 12-13526

the evidence in the light most favorable to the prosecution. So viewed, the evidence showed that Petitioner was in full control of his vehicle and accelerated it into a crowd of people despite that fact that several people were attempting to direct him away from the crowd. From this circumstantial evidence, a jury could infer that Petitioner was attempting to kill people standing in the crowd. Given the doubly-deferential stand of review applicable to this claim, the Court cannot find that the adjudication of this claim was unreasonable. In the words of the Supreme Court, the result did not "fall below the threshold of bare rationality." *Coleman, supra.* Accordingly, the claim does not merit habeas relief.

B.     Failure to Instruct Jury on Duress Defense

Petitioner's second claim asserts that he was entitled to jury instruction on the defense of duress. A defendant "is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor. " *Mathews v. United States*, 485 U.S. 58, 63 (1988)(emphasis supplied); see *Barker*, 199 F.3d at 876 (due process violation found where petitioner denied self defense instruction which was required under state law given the existence of "a sufficient evidentiary basis" for instruction). However, a court need not instruct the jury on the defense of duress or justification if the evidence is insufficient as a matter of law to support the defense. *United States v. Bailey*, 444 U.S. 394, 412-415 (1980). See also *United States v. Morgan*, 216 F.3d 557, 566 (6th Cir. 2000)(instruction which lacks evidentiary support or is based on speculation should not be

*Buss v Birkett*, USDC No. 12-13526

given); *United States v. Singleton*, 902 F.2d 471, 473 (6th Cir. 1990)(citing *Bailey* in holding that district court did not err in refusing to instruct jury on defense of justification if evidence could not support a verdict based on it).

Thus, no due process violation occurs due to the failure to give an instruction on a defense where there was insufficient evidence as a matter of law to support such a charge. See *Neuman v. Rivers*, 125 F.3d 315, 323-34 (6th Cir. 1997)(denial of writ upheld where district court properly found that there was insufficient evidence to warrant instructions on self defense and intoxication); *United States v. Samo*, 24 F.3d 618, 621 (4th Cir. 1994)(citing *Bailey* in holding that where evidence insufficient as a matter of law to support duress defense, no due process violation results from trial court's refusal to instruct jury on defense)(cited in *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 482 (6th Cir. 1999)).

In order to properly raise the defense of duress under Michigan law, a defendant has the burden of producing some evidence from which the jury can conclude that the essential elements of duress are present, namely: (1) the threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm; (2) the conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant; (3) the fear or duress was operating upon the mind of the defendant at the time of the alleged act; and (4) the defendant committed the act to avoid the threatened harm. *People v. Lemons*, 454 Mich. 234, 246-247 (1997).

*Buss v Birkett*, USDC No. 12-13526

In this case, the Michigan Court of Appeals found, as a matter of state law, that there

was insufficient evidence presented to warrant a duress instruction:

> Defendant claimed there was sufficient evidence to support a duress defense because of the threatening behavior of the crowd, which included a group of "5 to 20 people" surrounding his van and yelling at him, a person jumping on the hood of his van, several people pounding on his windows, and a person breaking the driver's side window. This evidence was insufficient to constitute prima facie evidence of duress. There was no evidence that defendant was threatened with any conduct that would have caused a reasonable person to fear death or serious bodily injury. Although defendant's window was broken, it was broken in an attempt to stop him from driving into the crowd. The testimony was consistent that at the time that the window was broken, defendant had already gunned his engine and was moving toward the crowd. Further, as the trial court concluded, there was "absolutely no evidence that defendant was in fear." Rather, the evidence showed that the group's actions were aimed at convincing defendant to stop his van. Moreover, a defendant's fear of death or serious harm must be reasonable under an objective standard to support a duress defense. *Lemmon*, supra at 247. Defendant's alleged subjective fear of being physically assaulted by the group was clearly unreasonable because there was no evidence that any person threatened him with death or serious bodily harm. And, of course, any threats would have been the result of defendant's own fault. *Lemmons*, supra. Consequently, the trial court properly declined to instruct the jury on the defense of duress.

*Buss*, No. 278279, 2008 WL 4228285, at *6-8.

This decision forecloses habeas relief. The state court found that the evidence

presented at trial, under the "objective standard" portion of its test, did not amount to duress.

Accordingly, Petitioner did not have a constitutional right to have the jury instructed on a

defense that did not apply to the facts of his case. In any event, the Court agrees with the

assessment of the state appellate court. After reviewing the record, there is no indication that

11

*Buss v Birkett*, USDC No. 12-13526

any of the people attempting to direct Petitioner away from the crowd were threatening death or serious bodily injury. Rather, the testimony indicated that they were pleading with him to stop or turn away from the crowd. One person jumped on the hood, and another attempted to grab the wheel after breaking through the passenger window, but none of the actions testified to amounted to a theat of death or serious bodily injury. Accordingly, Petitioner is not entitled to habeas relief based on this claim.

C. Limitations Placed on Cross Examination

Petitioner's third claim asserts that he was denied his Sixth Amendment rights when he was prevented from questioning the school principal about a previous incident where a vehicle entered the area during a carnival.

The Sixth Amendment guarantees the right of an accused in a state criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI; see also *Pointer v. Texas*, 380 U.S. 400, 407-08 (1965). Cross-examination is a "primary interest secured" by the Confrontation Clause. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965); see also *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). However, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

The Supreme Court "ha[s] recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of

12

*Buss v Birkett*, USDC No. 12-13526

cross-examination." *Davis*, 415 U.S. at 316-17. Accordingly, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Van Arsdall*, 475 U.S. at 680 (quoting *Davis*, 415 U.S. at 318). Nevertheless,"trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. at 679. "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985); see also *Davis*, 415 U.S. at 316 ("Cross-examination is . . . [s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation. . . .").

Where "it is merely the extent of cross-examination that is limited, the trial judge retains a much wider latitude of discretion. Once cross examination reveals sufficient information to appraise the witness' veracity, confrontation demands are satisfied." *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)) (internal quotation marks omitted). Thus, where a trial court limits a defendant's cross-examination, the court must balance the limitation against "the competing

*Buss v Birkett*, USDC No. 12-13526

interests at stake." *Lewis v. Wilkinson*, 307 F.3d 413, 421 (6th Cir. 2002) (internal quotation marks omitted). These interests include the prevention of mini-trials on collateral issues, see *id*. at 422; the probative or material value of the evidence toward the issues at trial, see *id*.; as well as the extent to which the defendant was able to cross-examine the witness, *United States v. Hynes*, 467 F.3d 951, 959-60 (6th Cir. 2006); *Boggs v. Collins*, 226 F.3d 728, 745 (6th Cir. 2000).

In this case, about three years prior to the incident involving Petitioner, there was another situation where a vehicle drove into the area of the carnival. Several individuals directed the vehicle stop, and it drove away. Defense counsel wished to question the school principal about this occurrence to show that Petitioner may have driven into the area innocently. The trial court found that the proposed evidence was not relevant because it did not have a tendency to make it more or less likely that Petitioner was not acting intentionally when, after driving into the area, he continued on and drove into the crowd.

The Court agrees with this assessment. While the prior occurrence may have had some minimal tendency to show that one could accidently drive into the area of the carnival, it had absolutely no relevance as to the issue of whether Petitioner's subsequent actions were innocent or not. The charges involved what occurred after Petitioner drove into the area. After being directed away from the carnival, Petitioner instead accelerated directly into the crowd. The prior incident simply had nothing to do with Petitioner's case.  If anything, it had a tendency to show that a vehicle could safely exit the area without driving through the

14

*Buss v Birkett*, USDC No. 12-13526

crowd. Therefore, the state courts reasonably rejected this claim, and it does not form a basis for granting habeas relief.

### D. Prosecutorial Misconduct

Petitioner's fourth claim asserts that the prosecutor committed misconduct. Specifically, he claims that the prosecutor suppressed a recorded telephone conversation, made improper comments during closing argument, and abused his charged discretion. These claims were raised by Petitioner in his motion for relief from judgment. The trial court denied the claim by finding it without merit and by finding that Petitioner should have raised it during his direct appeal. The Court finds that the claim is meritless.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); see also *Darden v. Wainwright*, 477 U.S. 168, 181(1986) (citing *Donnelly*); *Parker v. Matthews*,    U.S.   , 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard).

First, Petitioner claims that the prosecutor withheld a recorded conversation. While Petitioner was in jail awaiting trial, he had a phone conversation with Daniel Linowski. The

15

*Buss v Birkett*, USDC No. 12-13526

conversation was recorded by the jail.  Petitioner told Linowski that on the day of the

incident he stopped at an ATM machine. The prosecutor attempted to use this statement to

suggest that Petitioner was aware enough on the day in question to perform other tasks and

was not too "out of it" to form a criminal intent. Defense counsel objected on the grounds

that the recorded conversation had not been disclosed.

The Due Process Clause requires the state to disclose exculpatory evidence to the

defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true

*Brady* violation: The evidence at issue must be favorable to the accused, either because it is

exculpatory, or because it is impeaching; that evidence must have been suppressed by the

State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*,

527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, the petitioner must

show that: (1) evidence was suppressed by the prosecution in that it was not known to the

petitioner and not available from another source; (2) the evidence was favorable or

exculpatory; and (3) the evidence was material to the question of the petitioner's guilt. *See*

*Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29

(8th Cir. 1994). The petitioner bears the burden of establishing each of these three elements.

*See Carter*, 218 F.3d at 601. Further, although *Brady* requires disclosure of exculpatory

evidence, it is well established, that "*Brady* . . . does not require the government to create

exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687

16

*Buss v Birkett*, USDC No. 12-13526

(9th Cir. 1980); *see also, Richards v. Solem*, 693 F.2d 760, 766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence.").

Petitioner's argument fails for two reasons. First, the evidence was not unknown to Petitioner. Petitioner was obviously aware of his conversation with Linowski because he was a party to it. More importantly, however, Petitioner had not shown how the recording of the conversation was in anyway exculpatory. The trial court correctly rejected this claim.

Next, Petitioner asserts that the prosecutor committed misconduct during closing argument when he stated that Petitioner used his ATM card after the incident, and told the jury that voluntary intoxication would not be a defense. Contrary to Petitioner's argument, Linowski's testimony did suggest that Petitioner may have used an ATM after the incident, and in any event took a long route home instead of reporting the incident. Therefore, the comment was a fair one based on the evidence presented. With respect to the voluntary intoxication defense, the prosecutor's statement was true. No instruction on that defense was given to the jury, nor does Petitioner argue that one should have been given. Accordingly, this allegation of error is also without merit.

Finally, Petitioner asserts that the prosecutor abused its charging authority by charging him with assault with intent to commit murder. The claim is without merit because as discussed above, there was sufficient evidence presented at trial to convict Petitioner of that charge, let alone charge him. Petitioner's claim comes nowhere near suggesting the

prosecutor went beyond the considerable discretion allowed to him in his prosecutorial capacity. See *United States v. Armstrong*, 517 U.S. 456, 464 (1996).

E. Ineffective Assistance of Trial Counsel

Petitioner's fifth claim asserts several allegations of ineffective assistance of trial counsel. Petitioner contends that his counsel: (1) should have objected to the prosecutor's questioning of Linowski regarding the ATM card; (2) failed to move to dismiss a juror who spoke with a witness; (3) failed to impeach a witness who testified that nothing like the incident had ever happened before; (4) failed to request a duress jury instruction; and (5) failed to obtain records regarding Petitioner's ATM card usage.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show

*Buss v Birkett*, USDC No. 12-13526

that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington v. Richter*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See *Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. See *Whiting v. Burt*, 395 F. 3d 602, 617 (6th Cir. 2005).

None of Petitioner's allegations of ineffective assistance of counsel merit habeas relief. First, as noted above, there was no error in the prosecutor's cross examination of Linowski. Testimony about Petitioner's statements about what he did on the day of the incident were relevant and admissible. There was no viable basis for an objection.

Petitioner next asserts that his counsel should have objected to an interaction between a juror and a witness. Apparently, after the owner of the carnival equipment testified, the court clerk asked him for his business card. A juror overheard this conversation and also asked him for a business card. The witness did not have any cards, and he directed them to his website instead. Petitioner's mother overheard the conversation and brought it to the attention of defense counsel. Defense counsel, in turn, informed the trial court. After the

19

*Buss v Birkett*, USDC No. 12-13526

details of the incident were discussed, defense counsel informed the court that there was no need for further action. This rather innocuous exchange did not require defense counsel move for the juror in question to be removed or questioned. He did not perform deficiently for failing to pursue the matter. Moreover, Petitioner has not shown that he was prejudiced in anyway. The interaction does not suggest any bias on the part of the juror. This allegation is therefore without merit.

Next, Petitioner asserts that his counsel was ineffective for failing to challenge a witness's testimony that nothing like the incident had happened before at the carnival. Again, counsel was not deficient for failing to revisit the admissibility of the prior incident in light of this testimony. At most, and if successful, counsel would have been able to force the witness to concede that a few years previously another vehicle approached the area, but it was directed away without difficulty. As discussed earlier, such testimony would not have benefitted Petitioner. While it may have shown that a vehicle might innocently happen upon the area, it also would have shown that Petitioner need not have driven through the crowd to exit.  The allegation is without merit.

Petitioner's claim that his counsel was ineffective for failure to request a duress jury instruction fails because the request would have been futile. No such instruction was warranted under state law. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006).

Finally, Petitioner asserts that his counsel should have obtained records regarding the use of his ATM card on the day of the incident. Petitioner suggests that the records would

20

*Buss v Birkett*, USDC No. 12-13526

show that he did not use the card after the incident, and that this would have undermined the prosecutor's argument regarding his post-incident conduct.  But as noted by the Michigan Court of Appeals, Petitioner's convictions were based on the fact he "hit at least eight people and some of the inflatable rides before running over Manzo, who was holding her young son." Petitioner simply cannot demonstrate that even if he did not use his ATM card on the date of the offense and defense counsel was told this fact, that there was a reasonable probability that the outcome of the proceedings would have been different if counsel had investigated the ATM's usage. Petitioner was not prejudiced by his counsel's failure to pursue this line of defense.

Accordingly, the state trial court's rejection of Petitioner's ineffective assistance of counsel claim was objectively reasonable and does not provide a basis for granting habeas relief.

F. Ineffective Assistance of Appellate Counsel

In his final claim, Petitioner argues that his appellate counsel was ineffective for failing to raise his fourth and fifth claims during his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). This Court has already

*Buss v Birkett*, USDC No. 12-13526

determined that petitioner's claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in her handling of petitioner's direct appeal. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner demonstrates a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473 (2000). The Court finds that reasonable jurists would not debate the Court's resolution of Petitioner's claims. Therefore, the Court denies Petitioner a certificate of appealability. The Court will, however, grant Petitioner permission to appeal in forma pauperis.

*Buss v Birkett*, USDC No. 12-13526

V. Conclusion

The Court DENIES the petition for a writ of habeas corpus **WITH PREJUDICE**. The

Court **DENIES** a certificate of appealability but **GRANTS** permission to proceed on appeal

in forma pauperis.

**SO ORDERED.**

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: May 1, 2014

I hereby certify that a copy of the foregoing document was served upon parties/counsel of
record on May 1, 2014, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant

23